UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MOHAMED MUSAID,

                       Plaintiff,                       13-cv-7880 (PKC) (MHD)

      -against-                                   MEMORANDUM
                                                           AND ORDER

CONAN MANKA,

                       Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Mohamed Musaid, proceeding pro se, commenced this action on November 4, 2013, bringing claims against various defendants under 42 U.S.C. § 1983. On April 10, 2014, the Court dismissed all but plaintiff's excessive force claim against unnamed officers at Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson") or Kirby Correctional Facility. (Dkt. No. 9.) The Court held that it could not "conclude that no substantial claim could be asserted on [plaintiff's] behalf." (Id.) Pursuant to a Valentin order, the Office of the Attorney General for the State of New York identified one potential defendant, Conan Manka, a former staff member at Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson"). (Dkt. No. 15.) Plaintiff served the defendant with a copy of the amended complaint, to which an Answer was filed on November 14, 2014. (Dkt. No. 22.)

With discovery concluded, defendant moved for summary judgment on August 28, 2015 (Dkt. No. 44) pursuant to Rule 56, Fed. R. Civ. P. Defendant provided plaintiff with the requirements for opposing summary judgment and copies of the text of Rule 56 and Local Civil Rule 56.1, as required by Local Civil Rule 56.2. (Dkt. No. 45.) Under the Court's scheduling order, plaintiff's response was due on October 2, 2015. No response was filed and no

request for an extension to respond has been made in the over five month period since the making of the motion. Having failed to respond, the Court deems the motion fully briefed. Even where a summary judgment motion is unopposed, courts must determine whether the moving party has established its entitlement to judgment as a matter of law. See Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). For the reasons that will be explained, defendant's motion for summary judgment is granted.

COMPETENCY

This Court referred the action to Magistrate Judge Michael H. Dolinger for general pretrial supervision. (Dkt. No. 9.) In light of plaintiff's history of psychiatric evaluations, this Court also instructed Judge Dolinger that he "may include consideration of whether the appointment of a guardian ad litem is necessary to protect Musaid's interests in this case." (Id.) The Second Circuit has held that a court may be found to have abused its discretion by not considering whether Rule 17(c), Fed. R. Civ. P., applied if it were presented "with evidence from an appropriate court of record or a relevant public agency indicating that a party had been adjudicated incompetent." Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 201 (2d Cir. 2003). Magistrate Judge Dolinger was kept informed of developments regarding plaintiff's competency, including requiring that reports be sent directly to him. (Dkt. No. 28, 30, 32.) At no time did the Magistrate Judge deem the appointment of a guardian ad litem to be necessary.

After reviewing the record, the Court does not believe that the appointment of a guardian pursuant to Rule 17(c) is necessary to protect the plaintiff's interests. A New York court determined that plaintiff was competent to stand trial on April 22, 2015. (Letter dated April 23, 2015, filed under seal). He was discharged from Mid-Hudson and transferred to Rikers Island—first, the Anna M. Kross Center and, subsequently, the George R. Vierno Center—to

await trial.  (Dkt. No. 38, 43.)  Under New York law, a person who has been declared incompetent regains the capacity to sue once a court formally declares him competent to manage his affairs.  See Rossi v. Rossi, 190 Misc. 978, 979, 76 N.Y.S.2d 302, 303 (Sup. Ct. 1948) (citing Hughes v. Jones, 116 N.Y. 67, 73 (1889))

Furthermore, at the time the state court determined that plaintiff was competent to stand trial in a pending criminal case, discovery in the present action was still ongoing and plaintiff had a meaningful opportunity to participate.  Plaintiff had more than two months to request documents, take depositions, and make interrogatory requests.  (Dkt. No. 36.)  Despite not making any of his own discovery requests, plaintiff's deposition was taken on May 20, 2015.  A review of a partial deposition transcript shows that plaintiff's answers were coherent and that he understood the questions defendant was asking.  (Rosner Decl., Ex. B.)  Although a court must protect incompetent persons, litigants also "possess liberty interest in avoiding the stigma of being found incompetent, and *in retaining personal control over the litigation.*"  Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 651 (2d Cir. 1999) (emphasis added).  He had an opportunity to participate in discovery in the case and to respond to defendant's motion for summary judgment.  A state court has determined plaintiff to be competent to stand trial in a criminal matter and objective indicia in this case demonstrate his competence.  There is no basis to deny him the right to personally control this action.

BACKGROUND

During the relevant time period, plaintiff was a patient at Mid-Hudson, a facility that treats patients that have been found incompetent to stand trial, as well as patients committed after having been found not guilty at trial by reason of mental disease or defect.  (Rivas Decl. ¶ 5.)  Plaintiff was a patient at Mid-Hudson because he was found to be incompetent to stand trial.  (Id. ¶ 7; Rosner Decl., Ex. C-D.)  Dr. Osiris Rivas, one of plaintiff's psychiatrist at Mid-Hudson,

diagnosed him with schizophrenia, a "chronic psychiatric condition characterized by changes in personality, delusions, auditory hallucinations, grandiose and paranoid ideations, disorganized thinking, and inappropriate or bizarre behavior."  (Rivas Decl. ¶ 9.)  One symptom of plaintiff's schizophrenia is somatic delusions, which cause plaintiff to believe that his organs do not work and that his bones are broken.  (Id. ¶¶ 10-12.)

While at Mid-Hudson, plaintiff often refused to take his prescribed medications.  As a result, Dr. Rivas sought a court order permitting Mid-Hudson to medicate plaintiff over his objection.  (Id. ¶ 13.)  On June 26, 2013, the New York State Supreme Court held a hearing and determined that plaintiff lacked the capacity to consent to the administration of his medication, and authorized Mid-Hudson to treat plaintiff over his objection.  (Id. ¶ 14 & Ex. A.)  Subsequently, plaintiff had to be restrained from time to time to ensure the safe administration of his court-mandated medication.  (Id. ¶¶ 15-16 & Ex. B.)

Defendant was employed as a Secure Hospital Treatment Assistant ("SHTA") at Mid-Hudson from February 21, 2013 to December 5, 2013.  (Manka Decl. ¶ 4.)  One of defendant's responsibilities was to restrain patients when necessary, including at a physician's request to ensure the proper administration of a patient's medication.  (Id. ¶¶ 6-7.)  On three occasions between September 2013 and October 2013, defendant was "directed to restrain [plaintiff] by the physician on the ward."  (Id. ¶¶ 13-14, 16.)  Two of those occasions were requested "in order to allow the nurse to administer court-ordered medication."  (Id.)  On the other occasion, defendant "was directed to restrain [plaintiff] because he posed an immediate danger to [defendant.]"  (Id.)

Plaintiff alleges that during his commitment to Mid-Hudson, defendant used excessive force in violation of the Constitution, causing him severe injuries, including a broken

- 4 -

thumb on his left hand and a broken right hand.  (Am. Compl. at 3.)  Although he does not indicate when or where these injuries occurred, it stands to reason that they occurred during one of his three physical interactions with the defendant.  On September 23, 2013, plaintiff told Dr. Rivas that his thumb had been broken for four months, "but only started complaining about it for the past week."  (Rivas Decl. ¶ 18.)  Dr. Rivas examined plaintiff's thumb and noted that there was neither redness nor swelling.  (Id. & Ex. D.)  Plaintiff also did not accuse defendant of breaking his thumb at the time.  (Id. ¶ 19.)

Dr. Rivas referred plaintiff to an internist at Mid-Hudson, Dr. Tiong Hiap The. (Id. ¶ 18.)  Dr. The examined plaintiff's thumb and found that "there was no swelling, effusion (increased amount of fluid in the area), crepitus, redness, or step-off."  (The Decl. ¶ 13 & Ex. D.) In addition, Dr. The noted that plaintiff's complaint could be a somatic delusion, and was similar to a complaint that plaintiff lodged earlier in the year, which an x-ray confirmed to be unfounded.  (Id. ¶¶ 14-15 & Ex. C.)  In June 2014, plaintiff again complained of pain in his left thumb, in addition to injury to his right foot and toe.  (Id. ¶ 16.)  Dr. The examined plaintiff's thumb noting that there was "no tenderness, crepitus, step-off, swelling, and that [plaintiff] had full range of motion."  (Id. & Ex. E.)  Dr. The also ordered an x-ray, which confirmed that plaintiff did not have a broken thumb, and that "there was no prior fracture, dislocation, or focal bony lesion."  (Id. ¶¶ 17-19 & Ex. F-H.)

SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Id.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation and quotation marks omitted).  It is the initial burden of a movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law.  Vt. Teddy Bear Co., 373 F.3d at 244.  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

Pro se pleadings are reviewed liberally, and courts should interpret them "to raise the strongest arguments that they suggest." See e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted).  This is especially true in the context of summary judgment, because the claims of pro se plaintiffs are subject to final dismissal.  See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.") (citation omitted).  Despite liberally interpreting pro se pleadings, the litigant is not excused from his burden of coming forward with "concrete evidence from which a reasonable juror could return a verdict" in his favor.  Jermosen v. Coughlin, 877 F. Supp. 864, 867 (S.D.N.Y. 1995) (citing Anderson, 477 U.S. at 256).  In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.

DISCUSSION

Construing plaintiff's complaint liberally, he alleges that defendant used excessive force in violation of the Constitution, which resulted in significant injuries, including a broken thumb. (Am. Compl. at 3.) Because plaintiff is a pretrial detainee, the Court analyzes his claim under the Fourteenth Amendment rather than the Eighth Amendment. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). In Kingsley v. Hendrickson, the Supreme Court held that a pretrial detainee bringing a claim for excessive force under the Fourteenth Amendment must meet an *objective* standard by showing "only that the force purposely or knowingly used against him was objectively unreasonable." 135 S. Ct. 2466, 2473 (2015). Although the claim may be supported by a showing that the force used was "was taken with an 'expressed intent to punish'" may support such a claim, pretrial detainees may succeed in the absence of intent "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 2473-74.

While objective reasonableness depends on the facts and circumstances of each case, courts may consider a number of factors, including:

> The relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 2473 (citing Graham, 490 U.S. at 396).

Here, the evidence indisputably demonstrates that the force used by defendant was objectively reasonable. Any force used by defendant was rationally related to the

government's interest in providing care for plaintiff, and defendant's actions were not excessive in relation to that interest.

It has long been held that "the State may have a compelling interest, under its parens patriae power, in providing care to its citizens who are unable to care for themselves because of mental illness." Rivers v. Katz, 67 N.Y.2d 485, 496 (1986) (citing Addington v. Texas, 441 U.S. 418, 426 (1979)).  In the present case, the government's interest in providing care to the plaintiff is clear, and the use of occasional force to ensure that care is indisputable. Plaintiff was housed at Mid-Hudson because he was found incompetent to stand trial.  (Rivas Decl. ¶ 7; Rosner Decl., Ex. C-D.)  And because plaintiff often refused to take his medication, his psychiatrist, Dr. Rivas, applied for and received court authorization to forcefully medicate him.  (Rivas Decl. ¶ 13-14, Ex A.)  Pursuant to the court order, it became necessary to forcefully restrain plaintiff to ensure that he took his medication.  (Id. ¶ 15.)  The record, therefore, demonstrates that the use of force by Mid-Hudson employees was based on a compelling governmental interest to ensure plaintiff was properly medicated.  Addington, 441 U.S. at 426 ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves.").

Nor is there any evidence that the force used by defendant under the circumstances was excessive to its purpose.  Part of defendant's job was to restrain patients, which defendant was required to do on three occasions.  (Manka Decl. ¶¶ 6-7, 13-17.) Defendant received training on "approved physical intervention techniques," and was only permitted to use force as a last resort.  (Id. ¶ 6.)  Furthermore, on all three occasions, defendant used force only after being instructed to do so by plaintiff's physicians, and only to ensure that plaintiff took his court-ordered medication or to prevent immediate danger.  (Id. ¶¶ 14-16 & Ex.

A-C.) Moreover, each time defendant restrained plaintiff, the force used was limited both temporally and in degree, each instance of restraint lasting one, two, and three minutes, respectively. (Id.) See Kingsley, 135 S. Ct. at 2473 (noting that a factor relevant to the excessive force inquiry is the "effort made by the officer to temper or to limit the amount of force"); see also Kash v. Honey, 38 F. App'x 73, 77 (2d Cir. 2002) (holding that the intentional elbowing of an individual that did not result in any injury did not amount to a Fourteenth Amendment violation).

      Medical records also rebut any assertion that the force used by defendant was excessive under the circumstances. Although plaintiff contends that he suffered broken bones, including a broken thumb—evidence that tends to support the proposition that the force used was excessive—contemporaneous medical examinations and progress notes show otherwise. (The Decl. ¶ 19, Ex. G, H.) Dr. The's and Dr. Rivas's contemporaneous progress notes show that there were no physical indications of injuries, and x-rays revealed that plaintiff did not suffer any broken bones in his hand. (Id. ¶ 19 & Ex. G-H; Rivas Decl. ¶ 18 & Ex. D.) The record is ultimately void of any indication that plaintiff suffered a significant injury as a result of defendant's use of force. See Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (affirming summary judgment, where medical records indicated plaintiff suffered only minor injuries); Husbands ex rel. Forde v. City of New York, 335 F. App'x 124, 129 (2d Cir. 2009) ("One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force."); Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (holding that "a de minimis use of force will rarely suffice" to satisfy the objective element of an Eighth Amendment excessive force claim). Lastly, plaintiff's somatic delusions suggest a history of unfounded injury complaints. During his two stays at Mid-Hudson, plaintiff consistently

complained of broken bones in both of his hands, despite x-rays determining that he suffered from no broken bones. (Rivas Decl. ¶ 12; The Decl. ¶¶ 8-10, 13, 16-19 & Ex. A-B, F-H.) In addition, plaintiff consistently claimed that his organs did not work, despite all objective testing showing otherwise. (Rivas Decl. ¶ 11; The Decl. ¶¶ 6-7.) While not dispositive, this unrebutted evidence further demonstrates that plaintiff's injuries were insignificant or nonexistent.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. No. 44) is GRANTED. The Clerk of the Court is directed to enter judgment for defendant and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 9, 2016